### RID–JID PRODUCTS, Inc., et al. v. RICH PUMP & LADDER CO.
### No. 7743.

Circuit Court of Appeals, Sixth Circuit.
May 5, 1939.

Ralph F. Merchant, of Minneapolis, Minn. (Frank D. Merchant, Ralph F. Merchant, and Merchant & Kilgore, all of Minneapolis, Minn., and Allen & Allen, of Cincinnati, Ohio, on the brief), for appellants.

Walter F. Murray, of Cincinnati, Ohio (Walter F. Murray and Frank L. Zugelter, both of Cincinnati, Ohio, on the brief), for appellee.

Before SIMONS, ALLEN, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

The appellants, Rid-Jid Products, Inc., and J. R. Clark Company, instituted this action against the appellee, The Rich Pump & Ladder Company, to restrain alleged infringement of letters patent No. 1,359,124 granted November 16, 1920, to the Oregon Wooden Ware Manufacture Company, assignee of A. M. Springer, the inventor; letters patent No. 1,927,685 issued September 19, 1933, and No. 1,895,164 issued January 24, 1933, to the appellant, J. R. Clark Company, assignee of the inventor, J. E. Kalgren.

These patents relate to improvements on the mechanism of three-legged ironing boards or tables of the folding or collapsible type. The claims relied upon by the appellant to sustain infringement were held invalid by the lower court and appellants' petition dismissed.

Springer's patent No. 1,359,124 relates to improvements in the leg supports of ironing boards similar to those set out in his previous application of November 26, 1917. He points out that the important object of his invention over his previous application was to improve the mechanical efficiency of ironing boards and to effect an economy in their manufacture.

He claims he devised an ironing table, the rear legs of which, when attached to the board by double hinges, lie within its confines when collapsed and when raised automatically spread outward beyond them, retaining its rigidity and position without impairing its use. Three-legged collapsible ironing boards were old to the art at the time Springer's patent was granted. Oregon Wooden-Ware Manufacturing Company v. Murray, 215 F. 744, D.C.

Springer claims that in the prior art, there were no synchronized movements of the under-support of the table by applying pressure at one place only and that the rear legs moved to and from the board parallel with it and when collapsed were extended beyond its confines, which required greater space for transportation and for storage when not in use. He claims to have overcome these difficulties by fastening with hinges to the rear legs near their foot, braces which extended upward to the board to which they were fastened by a lug. He stated the rear legs were to be attached to the board "by any suitable means" which would admit of such oscillatory movement as would permit them to be expanded to the position which they occupy when in use or collapsed. He then stated this could be done by bolts or rivets passing through each of the rear legs and a base plate of a hinge jaw which affords simple and effective means for pivotally securing each leg to the board with freedom of movement about the longitudinal axis of the bolts or rivets. A chafing plate against which the base plate may wear is preferably secured to the board by terminal tongs. He then says that by the hinge mechanism two movements of the rear legs are provided in order to accommodate their movements to the actuation imparted to them by cooperation therewith and between each other of the resilient brace legs. By reason of their position relative to the rear legs, the third leg and to the board, the braces contribute to the rigidity of the rear legs in service, and to the firm support of the board.

Through the disalignment of the pivotal connections of the rear legs to the board in combination with the pintles of the hinge, means are provided whereby the rear legs may be automatically expanded and closed, solely by a pushing or pulling force applied to the braces, when setting up and collapsing the board.

Claims 1 and 3 in suit are as follows:

"1. The combination with a board and its supporting mechanism, comprising a pair of legs and an independent double hinge connection between each leg and the board, of means for actuating in part said double hinge connection and thereby expanding the free ends of said legs automatically operative whenever the legs are brought in a transverse plane substantially at right angles to the board."

"3. The combination with a board and its supporting mechanism, comprising a pair of legs and a double hinge connection between each leg and the board, of brace-legs secured to said legs and hinged in disalinement with said hinge connections to the board, respectively, whereby the bringing of the legs into a transverse plane substantially at right angles to the board causes the free ends of the legs to expand."

Kalgren in letters patent 1,927,685 used Springer's mechanism with the following changes: He attached to the underside of the table top near its rear end, two rigidly secured hinged lugs in the form of wooden cleats and pivotally connected the two rear legs to the upper end of the cleats by rivets, the connections being made with sufficient play for a lateral spread and contraction of the rear legs on erection and collapse of the board. The oblique or third leg is also pivotally connected to the rear end of the cleats by rivets and fits up to the bottom of the board. Two wooden bars forming top braces straddle the oblique or third leg and the rear end of these bars are pivotally connected to the rear legs by rivets. The free ends of these brace bars are held together by a short tie bar or strap of wood or some other material, the one next the board being closely held and the intermediate one near the third leg loosely connected through a bracket attached to the brace bar. The free ends of the brace bar are detachably fastened to the bottom surface of the board with a cleat or rib.

Braces in the form of metal straps connect the rear legs to opposite bars of the oblique or third leg in crossed arrangement, their lower ends connected to the rear legs by rivets and the upper ends bent laterally and pivotally connected to the bars of the oblique or third leg by pivot forming rivets.

Claim 5 which is in suit is as follows:

"5. The combination with an ironing board, of rear legs pivotally connected thereto for movements toward and from the board and for spreading movements, transversely crossed rear leg braces connected to said rear legs at one end, and cooperating board-supporting elements having angular movement in respect to said board and rear legs and having crank-acting connections to the other ends of said transversely crossed braces and arranged to spread said rear legs when said legs and co-operating board-supporting elements are turned to board-supporting positions."

Kalgren in letters patent 1,895,164 uses as a base both the Springer and his own mechanism and support under patent 1,927,685, with the following changes: The third or oblique leg is formed by a single bar pivotally fastened to a hinged bracket which is rigidly secured to the board, the downward movement of which is limited by its proximity to the board, the transverse portion of the hinged bracket engaging the under edge of said leg forward of its pivot.

A toggle acting top brace pivotally connects the rear legs to the bottom of the board. There extends from the rear legs, pivotally connected, a pair of wooden bars attached to the front end of the board by a wire brace, with a wooden hand piece in the center which is used by the operator in collapsing and expanding the board in one movement.

A tension acting bottom brace connects the rear legs and the free end of the third leg.

Claim 5 in suit is as follows:

"5. An ironing table comprising a top board, rear legs pivoted to said board for pivotal movements toward and from the board, a toggle-acting brace comprising a pair of bars pivotally connected to said legs and an approximately U-shaped member pivotally connected to the board the transverse portion of which extends between and is pivotally connected to the forward extended spaced ends of said bars providing a hand-grip piece between said bars, said legs and U-shaped member being pivotally connected to the board at

such points and the brace elements being of such length that when the legs are turned down from the board the toggle-acting brace will be buckled by said U-shaped member against the bottom of the board to support the same."

The earliest patent to which our attention is called relating to folding and self-supporting ironing tables was issued to White and King, August 16, 1887, No. 368,264, which was a four-legged collapsible board with the legs pivotally connected and capable of a transverse movement from the board when set up and when collapsed falling within the board confines, pressure being applied by the operator at more than one place to effect expansion or contraction. On October 11, 1898, patent number 612,083 was issued to Wright for a three-legged folding ironing board, all of the legs being pivotally connected, the rear ones held firmly in position by a jointed brace when set up. Pressure had to be applied by the operator to more than one part of the mechanism to collapse the board and bring it to an upright position.

On April 17, 1908, patent No. 883,830, was issued to Ridgway for a three-legged folding ironing board, all three legs being pivotally connected thereto. The spread of the rear legs was controlled by two connected locking bars made of flat metal pivoted to each other and to each leg. The oblique leg had several notches cut in its upper side into which the locking bars fitted for the purpose of controlling the height of the table. It took two movements by the operator to set up or collapse the board. On August 27, 1912, patent No. 1,036,887 was issued to Murray for a folding three-legged ironing table which had on its underside transverse bars to which the rear legs and the third leg were pivotally connected. The rear legs were connected with each other by rungs and also pivotally connected with them, and at a distance below the board a pair of braces were attached to the lower rung and connected with the board by a transversely arranged cleat. Connected by a pivotal pin to the oblique or third leg and to the rear legs, were an arm and a pair of tie rods. A chain was attached to the underside of the board and also to the third, or oblique, leg and it took more than one movement to expand and collapse it.

On May 26, 1914, patent No. 1,098,333 was issued to Sargent for a collapsible under-support four-legged ironing table,

the legs being pivotally hinged attached as to have both a longitudinal and lateral adjustment with or from the top of the board. On October 5, 1915, patent No. 1,155,612 was issued to Pitts for a three-legged collapsible under-support ironing board, which required only one movement of the operator to place it upright or collapse it.

On December 1, 1914, patent No. 1,113,-436 was issued to Langworthy for a three-legged, under-support, collapsible ironing board. His device had blocks spaced apart secured upon the bottom of the board with the legs pivotally connected thereto and requiring more than one movement to set up and collapse.

On June 30, 1924, patent No. 1,567,168 was issued to Olander in which he set the legs in crossed arrangement when the board was upright. This patent discloses all the elements called for by claim 5 of Kalgren patent No. 1,927,685.

On October 19, 1927, patent No. 1,774,-079 was issued to Bloom for a three-legged collapsible under-support ironing board with cross braces reinforcing the rear legs. On March 13, 1929, there was issued to Forney, patent No. 1,836,913 for a three-legged under-support ironing board with improved leg construction. The rear legs had bolts or pins in the upper ends loosely bearing at the inner sides and fitting into depending ears of an inverted, U-shaped bracket which was bolted to the under surface of the board, the facing ends of the bolts being sufficiently long that they had an oscillating or universal bearing in the openings of the depending ears, which permitted the legs to move toward and away from each other at their free ends transverse to the longitudinal axis of the board and to be swung to collapsed position beneath it.

Patent No. 1,910,006 was also issued to Forney, June 23, 1930, which provided for additional toggle brace means for holding together and stabilizing and making more rigid the rear legs and with a U-shaped bail with which to open and collapse it.

Patent to Keller, issued February 9, 1931, number not in the record, was for a three-legged collapsible under-support ironing board with a flat metal strap which performed the same function of the U-shaped bail in the Kalgren patent No. 1,-895,164, namely, the collapsing of the board and placing it in an upright position.

578

■ A patentee must be the discoverer of a new and useful art, machine or manufacture, to be entitled to a patent. He must do more than make a mere change of form or juxtaposition of parts or an external arrangement of things or the order in which they are used. An instrument or manufacture which is the result of mechanical skill merely is not patentable. Perfection of workmanship resulting in more convenient and increased use, or less expense of production, does not achieve patentability. Reckendorfer v. Faber, 92 U.S. 347, 358, 23 L.Ed. 719.

■■ A search of the prior art discloses that everything contained in the Springer and Kalgren patents was anticipated and if anticipation be not found as to claim 1 of the Springer patent in its own family of devices, it is found in the closely related art of hand saw benches. This claim states "means for actuating in part said double hinged connection and thereby expanding the free ends of said legs automatically operative whenever the legs are brought in a transverse plane substantially at right angles to the board." Adams patent No. 605,370, issued in 1898, provides for a collapsible hand saw bench. Two legs are hinged to one end of the board and are attached by means of long hinges, so as to permit a rotative movement from parallel to right angle position of the board and also a spreading movement lateral to the board. The legs are connected by a toggle mechanism consisting of two flat strips pivoted to each other in the center by means of a pin. Their outer end is pivoted to a screw bolt which in turn is screwed into a fixture or bracket fastened to the legs. From the center pin of the toggle a rod leads at an angle to the underside of the board where the rod is guided in the slot of the bracket fastened to the board. When not in operation the legs are folded flat against the top and when upright, locked at right angles to the board, with their lower ends spread. This appliance did not specifically provide means automatically to expand the rear legs about their double hinge connections to the bench whenever the legs are brought into a transverse plane substantially at right angles to the board, but this is not important because in determining anticipation, it is immaterial that the structure employed in the early use was neither the best that could be obtained, nor as skillfully designed or used as that

of the patentee. Smith v. Hall, 301 U.S. 216, 233, 57 S.Ct. 711, 81 L.Ed. 1049.

Having available this earlier conception, it was more a matter of mechanical skill than invention to devise automatic contraction and expansion of the under-support of the ironing table. National Cash Register v. Cash Indicator Company, 156 U.S. 502, 514, 15 S.Ct. 434, 39 L.Ed. 511.

As to claim 3 of the Springer patent anticipation is found in the closely related art of the collapsible step ladder.

Frizell patent No. 297,251, issued April 22, 1884, is for a step ladder with a number of steps, two vertical supports to which the steps are fastened and two additional vertical supports or props at the rear which are the conventional rear legs of the ladder. They are fastened to brackets at the top of the front legs and at the top step in such manner that they can be swung at an angle to the main body of the ladder or be moved back to the main operative position. There is also a lateral movement of the legs so as to spread the lower ends when in operative position which is accomplished by two crossed braces fastened at their lower end to the rear legs and at the upper end to a slide which in turn has connected to it a link, the other end of which is fastened to the main body of the ladder. When the rear legs are swung out into operative position, the link pulls on the slide producing a thrust on the brace for the rear legs and causing them to spread at the ends.

The movement of the legs in the Frizell structure is limited and their angularity with respect to the top step varies little in their movement through a small arc but this is immaterial. It was a device similar in operation to that described by Springer and capable of performing the same function. It presented Springer's conception subject to development and application by ordinary mechanical skill.

■ Appellants earnestly insist that the commercial success of its product manufactured under the patents in suit is persuasive evidence of their validity but, having reached the conclusion that all the patent claims relied on by the appellant are clearly invalid, commercial success becomes immaterial. Textile Machine Works v. Louis Hirsch Company, 302 U. S. 490, 499, 58 S.Ct. 291, 82 L.Ed. 382.

The decree of the District Court is affirmed.