**R. G. LE TOURNEAU, Inc., v. GAR WOOD INDUSTRIES, Inc.**

**No. 10752.**

Circuit Court of Appeals, Ninth Circuit.

Oct. 18, 1945.

Webster & Webster and Percy S. Webster, all of Stockton, Cal., and Naylor & Lassagne and Theodore H. Lassagne, all of San Francisco, Cal., for appellant.

Lyon & Lyon, Frederick S. Lyon, Leonard S. Lyon, and Reginald E. Caughey, all of Los Angeles, Cal. (Harness, Dickey & Pierce and Wm. Edward Hann, all of Detroit, Mich., of counsel), for appellee.

Before: GARRECHT, MATHEWS, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

Plaintiff brought action for the infringement of certain letters patent owned by it, and prayed for injunctive relief and for an accounting of profits and damages. Defendant by its answer denied the charge of infringement, attacked the validity of the patents, and counterclaimed under the declaratory judgment statute, 28 U.S.C.A. § 400, for affirmative relief on the ground that plaintiff had knowledge of the invalidity of the patents. A supplemental complaint alleged the reissuance of patent No. 2,152,899 by grant of reissue patent No. 21,-947. The District Court held invalid for want of invention claims 2, 5, 7, 20 and 22 of LeTourneau Patent No. 1,963,665 (1934) and claims 1, 2, 5 and 6 of Maloon Reissue Patent No. 21,947 (1941). Plaintiff's complaint and amended complaint were dismissed. Plaintiff appeals.[1]

---

[1] The amended complaint referred to patents 1,963,665 and 2,152,899 (later reissue patent 21,947) and charged their infringement. The answer alleged that all the claims of those patents were invalid and void but particularly claims 2, 5, 7, 14, 20, and 22 of patent 1,963,665 and claims 1 and 2 of patent 2,152,899. The supplemental complaint relating to the reissue of the latter patent averred the infringement of the original patent and particularly claims 1 and 2 thereof, and also averred the infringement of the reissue patent and particularly claims 1, 2, 5 and 6 thereof (5 and 6 are claims which appear in the reissue patent but not in the original pat-

The LeTourneau and the Maloon patents relate to large capacity, tractor drawn, earth moving scrapers which have three functions, that is, they dig and scrape up earth from the ground, carry it to desired locations, and there discharge it and grade it simultaneously. Numerous prior patents, including LeTourneau's own patent 1,857,-157 (1932), describe earth moving mechanisms of similar versatility.

The particular device described in patent 1,963,665 consists of a main bowl supported at its rear on wheels and at its front by a swivel pony truck. The bowl turns on the rear wheels as on an axis, and its front is raised from the ground by the action of a cable. The bottom of the main bowl terminates at its forward edge in a downwardly sloping scraper blade. The side walls extend about twice as far forward as does the bottom. The back wall is a movable endgate, which slides forward to the cutting edge of the bowl and forcibly ejects its contents.

Between the sides of the main bowl and in front of the scraper blade is an auxiliary bowl of scoop-like form in reverse position to the main bowl. In the operation of the machine the edge of the auxiliary bowl engages the blade edge of the main bowl uniting the two in such a manner as to constitute one earth retaining unit. A cable, other than the cable utilized for raising the main bowl, passes from a tractor power unit around several pulleys (one of which is mounted on the main bowl and one on the auxiliary bowl) to swing the auxiliary bowl upward and forward, thereby causing the retained earth to spill onto the ground in front of the scraper blade, which now also acts as a spreader. When the auxiliary bowl has reached its topmost limit of movement, the same cable then operates to pull forward the movable endgate of the main bowl to eject the collected earth.

The claims in suit of patent 1,963,665 in substance are all for a scraper having a main bowl with a forwardly moving endgate, an upwardly movable auxiliary bowl, and "a common operating means to both pull the endgate forwardly and raise the auxiliary bowl" and "to control the discharging of the * * * [bowls] in predetermined order."

Appellant claims as error (a) the District Court's conclusion of want of invention as to patent 1,963,665 in that the court made no finding of fact as to whether or not invention was involved in the five concepts underlying the design of the patented machine; (b) the court's failure to find that invention was involved in its five concepts;[2] and (c) the court's conclusion that Dunbar Patent No. 1,174,834 (1916) constituted evidence of want of invention as to LeTourneau's Patent No. 1,963,665.

---

ent and which are similar to claims 1 and 2).

The District Court's judgment of invalidity referred only to. claims 2, 5, 7, 20 and 22 of the LeTourneau patent, claim 14 having been disclaimed prior to the judgment, and claims 1, 2, 5 and 6 of the Maloon reissue patent.

The case has been conducted since the filing of the answer on the theory that the enumerated claims were the only claims involved herein. The briefs on appeal are based upon the same theory. In the face of such concerted agreement we shall consider as in issue only those enumerated claims.

[2] The five concepts claimed to be inventive by patentee in his brief are:

"(a) That a remedy for the loss of earth by outward movement thereof between the bowls, during loading, lay in maintaining constant, and relatively narrow, the width of the opening between the bowls during raising and lowering of the scraping blade in digging;

"(b) That a remedy for the loss of earth by outward movement thereof between bowls thus loaded in conjunction with each other, during raising of the main bowl to carrying position, lay in freeing the auxiliary bowl to drop down substantially to the surface of the ground during forward movement of the main bowl and before raising the scraping blade from the ground;

"(c) That a remedy for the sudden discharge of large amounts of earth at one time in the path of the moving grading blade, lay in discharging the two bowls sequentially instead of simultaneously;

"(d) That the discharge of the contents of the auxiliary bowl before the discharge of the contents of the main bowl would make it possible to positively eject, instead of merely to dump, the contents of the main bowl, thus adapting the scraper for effective operation in all kinds of earth;

"(e) That all of these advantages could be secured by connecting to the two bowls, a mechnical means common to both bowls and progressively operable to first lower or raise and thus discharge the contents of the auxiliary bowl and, after raising the latter, to operate a positive ejector for

The construction of the main bowl described in LeTourneau's patent in suit, the method of raising it by one cable, and its sliding ejector endgate operated by another cable correspond substantially to the mechanism disclosed in LeTourneau's prior patent 1,857,157 and are anticipated by it. As pointed out by the District Court, the patent in suit differs from that prior patent only in the addition of an auxiliary front bowl and in the extension of the endgate cable to the auxiliary bowl so that the common means of the cable would actuate both bowl and endgate in sequential order.

It is not claimed herein that novelty or invention were involved in the addition of an auxiliary front bowl to appellant's scraper, for the prior art reveals several instances of scrapers equipped with a front bowl or apron, namely, Ball patent 1,593,-007 (1926), Pfeil patent 1,293,536 (1919), and the Bodinson camelback and clamshell scrapers (manufactured and used during 1930 and 1931). Rather, according to appellant's brief, "The novel working relationship of the main and auxiliary bowls whereby the machine is rendered capable of discharging the contents of the two bowls sequentially in predetermined order as distinguished from simultaneously in the manner of the prior art scrapers is the very essence of the invention and marks the advance upon the prior art."

With respect to LeTourneau's single-pull cable, the common means to actuate auxiliary bowl and sliding endgate in predetermined sequential order, the District Court found that a cable and pulley system was a well known and commonly used load-moving device, that the use of a single-pull cable as a common means to actuate objects in predetermined order was common knowledge before the time of LeTourneau's patent, that Dunbar's patent 1,174,-834 had used a single cable and pulley system for such purpose in connection with the front and rear bowls of a drag line bucket, that the sequential movement of two loads attached to the same cable system was a matter of common mechanical knowledge, and finally that LeTourneau's adaptation of a cable and pulley system to accomplish the results it achieves in his scraper did not involve more than the exercise of ordinary mechanical and engineering skill and knowledge and did not require invention.

Nowhere in appellant's brief is there a contention that the District Court's findings are erroneous; instead the argument is directed to the trial court's failure to find that the enumerated concepts constituted invention. The findings outlined in the preceding paragraph are clearly supported by substantial evidence, and a study of the record reveals no contrary evidence. It is true, as appellant points out, that Dunbar's patent was not designed for the same type of work as a wheeled scraper. However, the District Court was referring to the system of cables and pulleys used therein in connection with a dirt-moving bowl; in that respect the patent was worthy of consideration herein. Also ample other evidence substantially supports the finding as to prior knowledge and use of cable systems.

Was LeTourneau's adaptation of a cable system to accomplish the results achieved in his scraper a matter of invention? LeTourneau connected a cable to a load-moving device. With one cable he moved two different loads, and by allowing for their varying weights, he moved them in sequential order. Such results had been accomplished before by means of cable systems. Therefore, LeTourneau merely utilized an old device for an old result, namely, the moving of loads in sequential order. Such a combination does not involve the exercise of inventive genius.

As the Supreme Court explained in Cuno Engineering Corporation v. Automatic Devices Corporation, 1941, 314 U.S. 84, 90, 62 S.Ct. 37, 40, 86 L.Ed. 58: "We may concede that the functions performed by Mead's combination were new and useful. But that does not necessarily make the device patentable. Under the statute, 35 U.S.C. § 31, 35 U.S.C.A. § 31, R.S. § 4886, the device must not only be 'new and useful,' it must also be an 'invention' or 'discovery.' * * * Since Hotchkiss v. Greenwood, 11 How. 248, 267, 13 L.Ed. 683, decided in 1851, it has been recognized that if an improvement is to obtain the privileged position of a patent more ingenuity must be involved than the work of a mechanic skilled in the art." The court stated further, 314 U.S. at page 91, 62 S.

the contents of the main bowl; and by employing as such mechanical means a mechanical connection disposed between the two bowls which would be always effective to raise and lower the auxiliary bowl as the main bowl was raised and lowered."

Ct. at page 41, 86 L.Ed. 58, "A new application of an old device may not be patented if the 'result claimed as new is the same in character as the original result' * * * even though the new result had not before been contemplated."

 Appellant repeatedly refers to its five basic concepts and insists that the conception of an abstract idea is an act of invention where the abstract idea . involves the combination of old instrumentalities for a new result, where the conception of the idea is not within the scope of the ordinary workman skilled in the art, and where the idea has been incorporated into a useful machine. Appellant's theory is not entirely accurate, for when as here a result is not different in nature from results achieved by similar means in the past, invention must be embodied in the means for carrying the abstract idea into effect, not merely in the conception of the idea. Knapp v. Morse, 1893, 150 U.S. 221, 228, 14 S.Ct. 81, 37 L.Ed. 1059; Wollensak v. Sargent, 1894, 151 U.S. 221, 227, 14 S.Ct. 291, 38 L.Ed. 137; Cuno Engineering Corporation v. Automatic Devices Corporation, 1941, 314 U.S. 84, 90-92, 62 S.Ct. 37, 86 L.Ed. 58; Page Steel & Wire Co. v. Smith Bros. Hardware Co., 6 Cir., 1933, 64 F.2d 512, 514; Cleveland Punch & Shear Works Co. v. E. W. Bliss Co., 6 Cir., 1944, 145 F.2d 991, 994.[3]

Appellant cites National Cash Register Co. v. Boston Cash Indicator & Recorder Co., 1895, 156 U.S. 502, 15 S.Ct. 434, 39 L. Ed. 511, in favor of its argument, but the opinion itself, 156 U.S. at page 515, 15 S.Ct. at page 439, 39 L.Ed. 511, refutes appellant's theory.

We think the District Court correctly held claims 2, 5, 7, 20 and 22 of LeTourneau Patent No. 1,963,665 void for want of invention.

The Maloon Reissue Patent No. 21,947, of which claims 1, 2, 5 and 6 are in question, merely substituted a pivoted dumping bowl for the stationary main bowl and the forwardly movable endgate of the prior LeTourneau patent 1,963,665. Pivoted dumping bowls were old in the scraper art long before the Maloon patent issued and are found in Barker patent 22,-847 (1859), in Pfeil patent 1,293,536 (1919), in Ball patent 1,593,007 (1926), and in the Bodinson clamshell and camelback scrapers of 1930 and 1931. The Maloon patent suggests only the substitution of an equivalent for LeTourneau's main bowl ejective device, only a mechanism which performs exactly the same function as its predecessor. No citation of authority is needed in such circumstances to support a holding of lack of validity for want of novelty and invention. The principle stated in the preceding paragraph nullifies the possibility of invention in Maloon's concept of simplifying LeTourneau's scraper by the substitution suggested.

The judgment of the District Court is affirmed.

---

3 The line dividing the principle followed herein from that appellant claims is applicable to the instant facts is difficult to define. Cases containing language in support of the principle suggested by appellant are as follows: National Cash Register Co. v. Boston Cash Indicator and Recorder Co., 1895, 156 U.S. 502, 514, 15 S.Ct. 434, 39 L.Ed. 511; In re Benckner, Cust. & Pat.App., 1936, 96 F.2d 326, 328; American Steel Foundries v. Damascus Brake Beam Co., 7 Cir., 1920, 267 F. 574, 576; Rosemary Mfg. Co. v. Halifax Cotton Mills, Inc., 4 Cir., 1919, 257 F. 321, 322; Cunningham Piano Co. v. Aeolian Co., 3 Cir., 1919, 255 F. 897, 900; International Curtis Marine Turbine Co. v. William Cramp & Sons S. & E. Bldg. Co., 3 Cir., 1914, 211 F. 124, 144; Los Alamitos Sugar Co. v. Carroll, 9 Cir., 1909, 173 F. 280, 283.