## AMERICAN STEEL FOUNDRIES v. DAMASCUS BRAKE BEAM CO.

(Circuit Court of Appeals, Seventh Circuit. July 9, 1920.)

No. 2819.

1. Patents ⬅328—1,161,737 and 1,192,466, for welded fulcrum for trussed brake beams, held valid and infringed.

The Schroeder process and product patents, Nos. 1,161,737 and 1,192,466, for a welded fulcrum for trussed brake beams, *held* valid, as disclosing invention, and infringed.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Patents �köm26(2)—Production of new result to meet recognized need is invention.**

The production of a new result, which met a recognized need and went immediately into general use, discloses invention, though there would be no invention in the adoption of any one of the successive steps by which the result was attained.

**3. Patents ⊫168(2)—Amendment to claims covered by drawings and specifications do not invalidate.**

Amendments to claims do not invalidate the patent, as indicating that the patentee had added elements thereto after observing the alleged infringer's commercial structure, where the substance of the amendments was supported by the specifications and drawings in the original application.

**4. Patents ⊫157(1)—"Welding" defined.**

"Welding," as used in the claims and specifications of a patent for a welded brake beam fulcrum, means that the molecules of one part under the applied heat and pressure mingled with and attached themselves to the molecules of the other part, so as to make an integral block.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit by the Damascus Brake Beam Company against the American Steel Foundries. Decree for complainant, and defendant appeals. Affirmed.

Suit to enjoin infringement of two patents Nos. 1,161,737 and 1,-192,466, to Frederick J. Schroeder, and assigned to appellee. Decree for complainant.

George L. Wilkinson, of Chicago, Ill., for appellant.
Wallace R. Lane, of Chicago, Ill., for appellee.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

EVANS, Circuit Judge. [1] The process and product patents here under consideration deal with a "strut" or "fulcrum" for trussed brake beams; a forged type being used in place of the more common form of malleable castings. A common type of trussed brake beams is herewith reproduced:

4' indicates the compression member, 3' the tension member, the ends of these two members being rigidly united at the brake heads 9 upon which the brake shoes are mounted. 8' is the strut or fulcrum member which spaces the other two members apart. The lever for moving the brake is fulcrumed thereon, passing through the openings in the arms.

Claim 3 of the process patent and 2 of the product patent, quite illustrative of all the claims involved, read as follows:

"3. The improvement in the art of producing slotted fulcrums for trussed brake beams, which consists in preparing a fulcrum blank having arms spaced for providing a lever slot between them, and then while at a welding heat, confining an end of said blank embodying portions of said arms, in a mold having a cavity of substantially rectangular sections, and subjecting the confined portions of the blank to the action of a pressing die having a seat-forming projection positioned to extend diagonally from one arm to the other, and thereby welding the confined portions of the arms into a solid block integral with and longitudinally superimposed upon the two' arms and bridging the slot between them."

"2. A forged metal fulcrum for brake beams, comprising a pair of substantially parallel wrought metal arms spaced apart to provide a lever slot therebetween, said arms having their ends formed with a solid, integral head provided with a recessed seat for a truss member extending diagonally across the planes of said parallel arms, each of the side walls of said diagonally extending, recessed seat constituting originally integral portions of both of said spaced arms."

The attacks made on the validity of the two patents can well be considered together.

[2] Invalidity is asserted because the improvement fails to disclose invention. To use dies and a driving head may, as appellant insists, be old. Quite similar steps for treating forged steel in the so-called "Buchanan yoke," the "swivel," and the "band for spring," clearly disclosed by appellant's testimony and well illustrated in its brief, doubtless constitute anticipation of this particular step. If invention consisted merely in using dies and a driving head, and welding forged steel, the decree could not stand, notwithstanding many expert witnesses seemed to question, prior to this discovery, whether "proper welding" of forged steel could take place, following the steps described by patentee. But obviously the structure and the process must be viewed as an entirety. It was patentee's combined conception—his appreciation of the problem, its difficulties, the remedies, and the practicability of the steps taken to accomplish the result of making the product a commercial success—that determines patentability. So viewed, invention may have existed, even though a hammer or a wrench were used, instead of the dies and a driving head. Likewise the substitution of forged steel for malleable castings may not alone have been sufficient in the present case to constitute invention. The problem confronting the patentee was one which called for a merchantable fulcrum, of great strength, of resiliency, using the least possible amount of material, a unitary structure, with one end supplying the seat for the tension member of the brake beam, so located with reference to the arms of the fulcrum as to reduce the possibility of their splitting when strain came to the finished article.

The desirability of a durable, satisfactory fulcrum, sometimes called the "king pin" in the brake system, cannot be questioned; for, if a brake be important, every link in the chain is equally essential. That appellee's fulcrum was a success is attested by abundant proof, by large and increased sales, by the demand of users that this type only be made, and lastly, but not least, by appellant's adoption of this type.

The use of the dies and driving head, of pressed steel instead of malleable castings, were but steps in the process. To build a head,

strong and resilient, in which might be erected the seat for the tension member, was but another step. To use a metal that would permit of welding, which in turn made possible a solid block head, "integral with and longitudinally superimposed upon the two arms and bridging the slot between them," and a seat extending "diagonally from one arm to the other," and perfectly designed for the purpose for which it was wrought, may be scornfully described as a "blacksmith's job," after the product has been completed, but seemed nevertheless to supply a long-sought cure for long-felt demand.

[3] We have no hesitancy in affixing to this discoverer the title of inventor. It is, however, claimed that certain elements in the product patents and steps in the process patent were added after patentee observed appellant's commercial structure. We have examined the specifications and the file wrapper, and find some of these charges are disproved by the record, while the others must be rejected, because the specifications and drawings in the original application were sufficient to support all the amendments that were subsequently made.

*Infringement.*—While appellant earnestly insists that for several reasons infringement does not appear, we will consider only the one which we deem the most weighty. Appellant contends that it does not infringe, because it does not, in its stamping process, weld "the confined portions of the arms into a solid block integral with and longitudinally superimposed upon the two arms and bridging the slot between them." The two arms of its fulcrum are not separated or distinct. They are composed of a single U-shaped bar. When placed in the dies, and the force of the driving head applied to the bottom of the bar heated to some 2700° Fahrenheit, there is an upsetting, a changing of position, but no "welding," of the "confined portions of the arms into a solid block integral with and longitudinally superimposed upon the two arms and bridging the slot between them." So says the appellant.

[4] We think the differences between expert witnesses arose over their inability or refusal to agree upon the meaning of the word "welding." As patentee used the words, we think there was a welding of the confined portions of the arms. Both portions of the arms were heated to a welding heat. The driving head made a block of the lower portion of the arms. Where the inner wall of the arms came in contact with the outer wall of the block, all heated as described, there was "welding," as that term is used in the patent; that is to say, molecules of one part of the arm mingled with and attached themselves to molecules of the outer and separated part of the arm, so as to make an integral block or head. It accomplished the same result by precisely the same processes, and even though a different intent or purpose was present (a fact we need not decide) infringement is nevertheless established.

The decree is affirmed.