28 C.C.P.A.(Patents)

## In re EGLOFF.

### Patent Appeal No. 3564.

Court of Customs and Patent Appeals.
Dec. 2, 1935.

Pennie, Davis, Marvin & Edmonds, of New York City (Clarence M. Fisher, of Washington, D. C., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

Appellant's two claims, relating to a claimed invention of a high-pressure steam generator, were rejected by the Primary Examiner of the United States Patent Office for lack of patentability in view of the prior art, which decision by the Examiner was affirmed by the Board of Appeals. From the decision of the Board of Appeals, appellant has taken this appeal.

The claims are numbered 3 and 4; 3 being an apparatus claim, and 4 being a method claim based upon the operation of the generator. Claim 3 follows: "3. In a high pressure steam generator, the combination with at least one continuous tube having a length from the point of admission of the working medium to the point of discharge thereof which is at least 10,000 times the internal diameter of the tube, whereby under normal operation of the generator the working medium flows through the tube at a velocity sufficiently high that steam bubbles cannot form on the internal walls of the tube, and a throttling device between the generator and the point of consumption, said throttling device being regulated in accordance with the steam pressure on the generator side thereof, so that when the steam pressure in the generator rises or falls the cross-sectional area of the passage through the device is automatically increased or reduced respectively to maintain a substantially constant pressure in the generator and thereby prevent vibrations of flow which would normally result from the working medium flowing at high velocity through such great length of continuous tube."

The references relied upon are: Bey, 1642098, September 13, 1927; Norton, 1707920, April 2, 1929; Benson (Br.) 201304, August 2, 1923; Swedish patent 70488 of 1927.

Appellant's disclosure shows a generator with a furnace in which is a continuous tube for the production of steam. The length of the tube is stated to be not less than 10,000 times the interior diameter of the same. Appellant uses a throttling device between the generator and the point of consumption of the steam. The throttling device is regulated by a pressure control device in accordance with the steam pressure on the generator side and maintains a substantially constant pressure in the generator.

Appellant points out in his specification that in order to reduce corrosion in the interior walls of the tube it is necessary to first force the steam or working medium through the tube at a high speed, and that doing so will prevent steam bubbles from forming on the tube walls; that reducing the size of the diameter of the tube and forcing the steam through the same at a great speed would not sufficiently heat the water unless the tube was unusually long, and that when such a tube was used it was found that slugs of water were carried along with the steam, which slugs were a source of danger, not only to the tube walls, but to the apparatus with which the steam came in contact, and that the entrained water caused a hammering or oscillating of the tube; and that this oscillation in the long tube of small diameter is prevented by him by the use of the throttling valve and the pressure control device shown.

The patent to Bey relates to a steam generator containing a coil, and it is there stated that "sufficient pressure and speed is kept up for maintaining the coil *a* full of water and preventing steam separation in the latter."

The patent to Norton shows a steam generator including a coil in which: "* * * The continuous increased flow of water through the coil prevents scaling and enhances the efficiency of heat transfer as the rapid circulation through the small coils tends to prevent the formation or maintenance of steam pockets."

Benson, a British patent, shows a power-producing apparatus, and in the drawings a boiler tube of substantial length is shown as well as a pressure storage device in connection therewith. In appellant's brief is found the following: "The British patent to Benson was cited merely to show a tube of substantial length. Actually, the tube of that patent has a length which is approximately only 1,800 times its internal diameter, while applicant specifies a tube having a length at least 10,000 times its internal diameter."

Nothing is found in the British patent which states or definitely shows the length of the tube, but we think it is fairly shown that the tube is comparatively long with respect to its diameter.

The Swedish patent relates to method and device for operating a steam power plant, and shows a steam generator and consumer. In order to regulate the pressure of the steam before its entrance into the main engine a throttling engine is used. In his specification the inventor states: "The present invention proposes a method and device for operating a steam power plant, consisting of a steam generator and consumer, especially one in which the working medium is heated at no less than critical pressure to no less than critical temperature. If thus water is used as the working medium, the pressure employed will be at least 225 atm. and the temperature at least 374°. As it is generally not possible to use steam of such high pressure for operating an engine directly, it is throttled before use. * * *"

The Examiner rejected the claims on the Swedish patent, and stated:

"The Swedish patent upon which the claim was rejected has a single tube (1) coiled in a furnace with the outlet leading to a steam consumer (4). A throttling device (9), operated by the pressure at the outlet of the generator, increases or decreases the effective area of the outlet pipe upon increase or decrease of pressure, respectively, just like applicant's throttling device (13).

"The patent to Benson was used merely to show a boiler formed of a tube of great length.

"Applicant admits that the Swedish patent shows a throttling device similar to his but points out that the tube of the patent is not as long as his. However, applicant in his specification stated that, in a boiler built of a continuous tube wherein the working medium is introduced at one end and leaves the other as steam (referring evidently to prior art boilers which may well include one like the Swedish patent shows) a sudden drop of pressure would cause the undesirable oscillation of the working fluid. Hence, it is reasonable to suppose that the boiler of the Swedish patent would have this fault if the throt-

tling device were omitted. The oscillation would, no doubt, be less than in applicant's device but the difference would be merely one of degree. Applicant, by increasing his tube length, has merely aggravated the need for the throttling device.

"Applicant has incorporated into his new claims the limitation of a speed sufficient to prevent steam bubbles forming on the walls of his tube. The speed of flow is not a result of the length of a tube but of the pressure exerted on the liquid in the tube. The patents to Bey and Norton show very short tubes, yet they circulate the water so rapidly that steam pockets are prevented from forming in the tubes. See Norton's specification, page 2, lines 103 to 109.

"It is believed that the new claims are unpatentable over the Swedish patent since the limitations depended on to define over same, namely, the length of the tube and the speed of flow of the working medium do not predicate patentability, since the length of tube, a difference merely of degree, and the speed of flow for the purpose cited, are old in prior art."

It will be observed that it was the view of the Examiner that the length of the tube in appellant's device and in the devices of the prior art was "a difference merely of degree."

The Board of Appeals found no reversible error in the Examiner's action, and said: "While the length of the tube in appellant's device is apparently shown as greater than that in the Swedish reference, this difference in degree is not considered a patentable distinction."

We think the tribunals of the Patent Office arrived at the correct conclusion. In the prior art it was known that speed through the tubes prevented steam bubbles. It was also known that reducing the diameter of the tube was one means of increasing the speed of the steam. It was obvious that if the steam in the tube was to be heated the tube had to be sufficiently long to permit the water to remain in the heated area for a sufficient length of time to generate the steam. The Benson patent shows a comparatively long tube which would accomplish the purpose of avoiding the steam bubbles and interior corrosion of the tube and at the same time permit satisfactory heating of the steam. The Swedish inventor taught that in order to control the pressure and to obtain the best results a throttling device should be used before the steam was conducted to the point of consumption.

Appellant argues that his combination is new both as to apparatus and as to method; that by the new combination he solved a problem which had not been solved up to that time, and that he obtained a new and useful result by applying certain features of the prior art to an extraordinarily long tube where the problem became troublesome. Appellant furthermore has urged at great length that the alleged patentable novelty in the instant case rests in determining what was the cause of the difficulty in the prior art structures even though the construction of the means used to overcome the difficulty may not be new or require invention, and he has cited numerous cases which he claims support his contention.

The courts have, on frequent occasions, in considering the question of the presence of invention under a given state of facts, stressed, in various forms of expression, the importance of taking into account "the inventor's appreciation of the problem, its difficulties, the remedies, and the practicability of the steps taken to accomplish the result of making the product a commercial success." In this connection appellant has laid particular stress on the decisions in American Steel Foundries v. Damascus Brake Beam Co. (C.C.A.) 267 F. 574, and National Cash Register Co. v. Boston Cash Indicator & Recorder Co., 156 U.S. 502, 15 S.Ct. 434, 39 L.Ed. 511.

The Solicitor for the Patent Office, replying to the argument of appellant on this phase of the case, says, in substance, that the applicant cannot receive a patent such as is here applied for merely because the applicant was able to give the scientific explanation of why there were no oscillations in the old devices and why there were oscillations in a long pipe of the kind he describes in his specification with which no throttling device was used. The Solicitor states that it is a method and device which may be patented and not the scientific explanation of their operation, and on this point a number of authorities are cited, and quotation is made from Aron v. Manhattan Railway Co., 132 U.S. 84, 10 S.Ct. 24, 26, 33 L.Ed. 272, as follows: "His right to a patent, however, must rest upon the novelty of the means he contrives to carry his idea into practical application. It rarely happens that

old instrumentalities are so perfectly adapted for a use for which they were not originally intended as not to require any alteration or modification. If these changes involve only the exercise of ordinary mechanical skill, they do not sanction the patent."

We have examined the authorities cited in appellant's special memorandum and find nothing there that would warrant the conclusion that the Patent Office tribunals were in error in holding that, although appellant was enabled to ascertain why oscillations in boiler tubes occur, what he did in making a combination of old art devices did not amount to invention.

In our judgment, the Swedish inventor is entitled to use his throttling device upon a tube of any length, and to concur in appellant's contentions would be to say that those operating under the Swedish patent could not do so on a tube longer than one which is at least 10,000 times the internal diameter of the tube.

Under the circumstances above set out, we are of the opinion that a skilled mechanic looking into the prior art at the time appellant approached the problem could combine the features shown in the prior art without exercising inventive ingenuity.

For the foregoing reasons, we conclude that the Board of Appeals committed no error in affirming the decision of the Examiner, and its decision is affirmed.

Affirmed.