**PESCI et al. v. F. A. VIESER & SON, Inc.**
**No. E–5903.**

District Court, D. New Jersey.
Jan. 31, 1941.

---

[1] 48 Stat. 34, 7 U.S.C.A. § 608.

Boyle & Archer, Frederick P. Greiner, both of Camden, N. J. (F. De Witt Goodwin, of Philadelphia, Pa., of counsel), for plaintiffs.

Albert B. Melnik, of Camden, N. J. (Caroline K. Kenworthy and Harry Langsam, both of Philadelphia, Pa., of counsel), for defendant.

AVIS, District Judge.

A patent suit involving the following facts:

(1) The patent was issued to plaintiff Thomas Pesci on May 11, 1937 in pursuance of an application filed by patentee on May 28, 1936, patent No. 2,079,870. The patent relates to improvements in blocks used for printing linoleum and other floor coverings.

(2) The method of preparation is to construct a nonwarpable block of four laminated wooden materials of a total thickness of about 2 inches, the block being approximately 19 inches in width and 108 inches in length. On the top of this block, running across its width, certain cuts are made, called kerfs; these cuts are usually about 1/16th of an inch in width and about 3/16th of an inch in depth, leaving the upright parts about 1/16th of an inch in width. Across these kerfs, and at right angles thereto, some one, about the year 1909, conceived the idea of placing what are called scratch lines of 10, 12, or 14 to the inch as desired, and, because of the fact that if they were made deeply in the kerfs it would interfere with the printing, they were lightly cut or pressed.

(3) The kerfs and scratch lines were used to locate the place or places on the block where the designs and places for designs were to be cut. To locate these places, the method was to count so many kerfs in one direction and so many scratch lines in another direction, by which the location of the design was fixed, to be used the full length and width of the block.

(4) The disclosures in the patent issued to Pesci provide for the placing of a contrasting color or mark on the scratch lines, making it easier for the operators in tracing the design on the block and in cutting it. The evidence indicates that the contrasting mark on the scratch lines makes it more convenient for the persons engaged in tracing and cutting the design, and increases the efficiency of the workers.

(5) The testimony showed that before ink lines or other contrasting color was put on the scratch lines, it had been the custom of operators on blocks to count the lines and kerfs and impose pencil lines upon the blocks at proper places and running in some instances the full width and length of the block, and that this method had been used for many years.

(6) The claims of plaintiffs at issue in this action relate only to the adding of inked lines on the scratch lines for making them more visible and to increase legibility of said lines.

### Conclusions of law.

The legal questions involved are stated in the plaintiff's brief to be "that the patent in suit is void by reason of anticipation in view of the prior art and want of invention." The defendant's brief states these questions to be, because of (1) failure to define invention over the prior arts, (2) the alleged invention is not proper statutory subject matter for patent protection, and (3) the alleged invention was in prior public use for more than two years prior to the time the patentee filed his patent application.

There is some difference in words as to the issues, but not much in fact.

It is not required to examine in detail the patents heretofore issued and claimed to be in anticipation, as none of them can be considered of a character similar to the patent in question.

The main, and it seems to me the only, issue is whether the object for which the patent was issued is an invention and entitles the plaintiff to monopolize the use

of contrasting markings on scratch lines. The process of imposing the contrasting inked lines was not disclosed in the evidence and is not at issue. Nothing is involved in the patent but the fact that so called ink lines are imposed on scratch lines.

In view of all of the circumstances I do not think this constitutes invention. For many years operators had used pencil marks to fix the location for designs. The idea of patentee was following out this original practice, and it probably came to his mind by reason of seeing how operators used the pencil line.

"To be patentable, a thing must not only be new and useful, but must amount to an invention or discovery." Syllabus. Thompson v. Boisselier, 114 U.S. 1, 2, 5 S.Ct. 1042, 29 L.Ed. 76.

It is true that patentee has shown mechanical ingenuity in providing for the imposition of ink lines, and the result has been of some service to the operators and the art in general, but, in my opinion, it is not inventive genius.

It could be said that it has been commercially successful, but this fact does not justify the sustaining of a patent. In the case of Atlantic Refining Co. v. James B. Berry Sons Co., 3 Cir., 106 F.2d 644, 650, the court said: "The record shows the commercial success of the Lewis method. But it is the law that the test of commercial success may be applied only when the question of novelty is fairly open to doubt."

Mechanical ingenuity is not enough to sustain a patent. In the same case (Atlantic Refining Co. v. James B. Berry Sons Co., supra), the court on second rehearing said: "That Lewis has shown mechanical ingenuity in adding the auxiliary steam strippers is not open to doubt, but has he displayed inventive genius? This is the crux of the case at bar in view of the fact that no exact anticipation is displayed in the prior art. His disclosures seem the result of a regular development of the art of fractionating hydrocarbons, he adding an ingenious and commercially valuable step. But, in the light of the development of the prior art, we cannot conclude that the end which Lewis achieved was the result of that incandescent and illuminating instant in which the mind grasps a hitherto undisclosed principle and with it achieves a new result whether by new

tools or old. Lewis must be held not to have displayed inventive genius." 106 F.2d 655, certiorari denied, 308 U.S. 623, 60 S.Ct. 379, 84 L.Ed. 520.

A case very much in line with the instant case, and which arose on appeal to the Court of Appeals of District of Columbia from the Commissioner of Patents, is the case of In re Anderson, 56 App.D.C. 139, 10 F.2d 1004, in which it was held that the making of index or identifying white letters on matrices used in typesetting machines, to contrast with surrounding dark metal, thereby facilitating easier reading, was not a patentable invention.

Counsel for plaintiffs cite the case of Matrix Contrast Corporation v. Kellar, D.C., 34 F.2d 510, as sustaining their contention—and it does—, but I do not think that the principle therein stated on page 513 of 34 F.2d can be considered at this time as a proper basis for sustaining the validity of a patent, and certainly it is in conflict with the reported cases in this Circuit.

An order will be signed dismissing the complaint with costs.